# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JAMES MEREDITH, JR.,                             Case No. 1:06-cv-364
      Petitioner

                                            Weber, J.

      vs                                 Hogan, M.J.

WARREN COUNTY PROBATION
DEPARTMENT,
      Respondent                         **REPORT AND RECOMMENDATION**

Petitioner brings this case through counsel seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition (Doc. 1), and respondent's return of writ. (Doc. 5).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the Twelfth District Ohio Court of Appeals:[1]

> {¶ 2} Appellant was indicted on 18 counts of gross sexual imposition in violation of R.C. 2907.05 for giving his minor daughter massages. Appellant's daughter, R.M., testified that, beginning when she was 12 years old, appellant would give her massages that lasted up to 40 minutes in duration, and as frequently as up to four times per week. R.M. explained that while lying in her bed, on her stomach, appellant would remove her pants and underwear and rub her back, buttocks, and thighs. R.M. further testified that after she turned 13 years old, appellant would also roll her on to her back, pull up her shirt and rub her chest around her breasts. R.M. also stated that appellant would often spread her legs and rub the inside of her thighs, focusing on her "private areas."

(Doc. 5, Exh. 7 at 1-2).

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

On May 10, 2004, petitioner was convicted after a jury trial on thirteen counts of the lesser included offense of sexual imposition in violation of Ohio Rev. Code § 2907.06(A)(4). Petitioner was sentenced to 180 days in jail and five years probation.  Petitioner was also found to be a sexually oriented offender under Ohio law requiring him to register with local authorities for a period of ten years.  Petitioner has served his jail time and is on probation.

Represented by additional counsel, petitioner filed a timely appeal of his conviction to the Twelfth District Ohio Court of Appeals. (Doc. 5, Exh. 4).  On May 31, 2005, the Court of Appeals affirmed the judgment of the trial court. (Doc. 5, Exh. 7).  Petitioner then filed a motion to certify conflict which was denied by the Court of Appeals. (Doc. 5, Exhs. 8, 10).

Petitioner through counsel filed an appeal to the Supreme Court of Ohio. (Doc. 5, Exh. 11).  On October 26, 2005, the Supreme Court of Ohio declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question. (Doc. 5, Exh. 13).

Represented by new counsel, petitioner filed a motion to reopen the direct appeal pursuant to Rule 26(B), Ohio Rules of Appellate Procedure, presenting a claim of ineffective assistance of appellate counsel. (Doc. 5, Exh. 14).  The Ohio Court of Appeals denied the motion on February 13, 2006. (Doc. 5, Exh. 16).  Petitioner timely appealed to the Supreme Court of Ohio which dismissed the appeal on June 7, 2006. (Doc. 5, Exhs. 17, 19).

On June 14, 2006, petitioner filed a petition for writ of habeas corpus in this federal court.  The Petition for Writ of Habeas Corpus raises the following grounds for relief:

**GROUND ONE:** Insufficient evidence to support convictions.

**GROUND TWO:** Denial of Confrontation rights in refusing to permit cross-examination with prior inconsistent statements.

**GROUND THREE:** Violation of right to jury trial through improper jury

instructions.

**GROUND FOUR:** Violation of Due Process rights by excluding defense expert and lay witness.

(Doc. 1).

## II.  STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  In addition, the decisions of the Ohio courts are binding on this Court unless they are contrary to clearly established law or were based on an unreasonable determination of the facts of record.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court]

3

> cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor*, 529 U.S. 362 (2000).

## III.  GROUND ONE IS WITHOUT MERIT.

Ground One of the petition asserts that the evidence adduced at trial was insufficient to sustain petitioner's convictions.  The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316  (1979); *In re Winship*, 397 U.S. 358, 364 (1970).  In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the Court "does not reweigh the evidence or redetermine the

4

credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003)(citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id*.  In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.  *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).

The Ohio Court of Appeals denied petitioner's motion to reopen the direct appeal as untimely and therefore did not address the insufficiency of evidence claim raised therein by petitioner.[2]  Because the state court did not address the merits of this claim, this Court conducts a *de novo* review. *Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005), citing *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003).

Petitioner contends that the State failed to present sufficient evidence to support a finding that petitioner massaged his daughter for either his or her sexual gratification.  Petitioner was convicted of sexual imposition in violation of Ohio Rev. Code § 2907.06(A)(4) which provides:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies . . . .
>
> (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.

_____

[2]Respondent did not raise the issue of procedural default as to this claim, which issue is an affirmative defense.  *See Trest v. Cain,* 522 U.S. 87, 89 (1997).

Ohio Rev. Code § 2907.06(A)(4). "Sexual contact" is defined by statute as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Ohio Rev. Code § 2907.01(B). "Whether the touching was undertaken for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances surrounding the contact." *In re Anderson*, 116 Ohio App.3d 441, 443-444, 688 N.E.2d 545, 547 (Ohio App. 12 Dist. 1996), citing *State v. Mundy*, 99 Ohio App.3d 275, 289, 650 N.E.2d 502, 510 (Ohio App. 2 Dist. 1994).

In this case, petitioner points to evidence showing that petitioner's daughter felt "uncomfortable" by the touching and therefore was not sexually gratified. (Tr. 29). Petitioner also cites to evidence that the massages were not sexually gratifying to petitioner, but rather were a part of a bedtime routine and out of concern for his daughter's physical fitness. (Tr. 21, 36). Petitioner cites to testimony indicating he encouraged his son and daughter to adopt good exercise and eating habits. (Tr. 36). He also cites to testimony that he was fully clothed and did not talk during the encounters and that often a lamp or nightlight was on in the room. (Tr. 24, 25). Finally, petitioner cites to testimony that his daughter realized the massages were "wrong" several months after the fact (Tr. 58), indicating she did not initially perceive them to be sexual in nature.

On the other hand, there was testimony from petitioner's daughter that when she was in the seventh and eighth grade petitioner would "frequently" at bedtime rub her back and "go down and touch around [her] private areas." (Tr. 21). Specifically, his daughter testified that petitioner would "usually rub [her] back and then go down and rub around [her] bottom and around [her] chest and around [her] other private areas." (Tr. 22). She testified that petitioner "would

6

usually take [her] pants and underwear off and rub around [her] thighs and bottom." (Tr. 22; see also Tr. 27). She testified petitioner would rub the entire length of the inside of her thighs "very close" to her "private parts." (Tr. 23). Petitioner's daughter further testified that in the eighth grade, she would turn from her stomach to her back, be on her back more frequently, and that petitioner would move her legs to spread them. (Tr. 23, 26). She testified the nightlight or night stand light would be on and the door "cracked a little bit" and that the massages occurred two to four times per week. (Tr. 24). She denied that he talked to her when he was rubbing her back and other areas. (Tr. 25). She testified that when she was on her back, petitioner would push her shirt up and touch her between the breasts and on the sides of her breasts. (Tr. 27-28). She testified that he would rub around her private areas more than her neck or arms. (Tr. 33). Petitioner's daughter testified that she did not tell anybody what was happening while this was going on "because . . . he was my dad," "he went to church, he was liked a lot and I just figured it was normal and that there was nothing wrong with it" but "during it, I was feeling uncomfortable and I figured there was something wrong, but I never wanted to think there was." (Tr. 38).

There was also evidence presented that petitioner sent an email to his wife which stated, in part, "I am very sorry. What seems so innocent, rubbing her back, led to rubbing her bottom as well. . . . My thinking was fleshly and I was wrong." (Tr. 152). Petitioner's mother-in-law also testified that petitioner admitted he rubbed his daughter's back, buttocks, thighs, calves, feet, ribcage and around her breasts, and crotch area, but told her "there was no penetration." (Tr. 176). Petitioner's brother-in-law was present for this conversation and confirmed the same. (Tr. 183).

7

Petitioner testified he did not recall using the word "penetration" during the conversation with his mother-in-law. (Tr. 202).  He also testified that he would move his daughter's pants down to massage her buttocks, then move them back up again when giving her a full body massage. (Tr. 208).  He denied that he ever massaged her while she was on her back. (Tr. 211, 214).

There was ample evidence presented from which the jury could infer from the type, nature, and circumstances surrounding massages that such touching was "for the purpose of sexually arousing or gratifying either person." Ohio Rev. Code § 2907.01(B).  The evidence of the touching or rubbing of the erogenous zones, including the buttocks, inner thighs, and between the breasts, the removal of pants and underpants, the frequency of the massages, and the email from petitioner indicating his remorse and that his "thinking was fleshly and I was wrong," when viewed in the light most favorable to the prosecution, was sufficient to support a finding of that petitioner massaged his daughter for either his or her sexual gratification.  Faced with the contradictions between petitioner's testimony and the other evidence presented at trial from his daughter, wife, mother-in-law, and brother-in-law, the jury apparently determined that petitioner's description of events was less credible than the testimony of the other witnesses. That the jury did not believe petitioner's testimony does not equate to a lack of sufficient evidence to convict him, and petitioner has demonstrated nothing more than that the jury rejected his version of events.

When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, and for the reasons discussed above, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's convictions for sexual imposition.

8

Therefore, Ground One of the petition is without merit and should be denied.


## IV.  GROUND TWO IS WITHOUT MERIT.

In Ground Two of the petition, petitioner contends he was denied the right to confront an adverse witness against him in violation of the Confrontation Clause of the Sixth Amendment. Specifically, he asserts that the trial judge precluded him from questioning his daughter on the credibility of her in-court testimony by denying trial counsel's request for additional time to review the witness's prior inconsistent statements.  In accordance with Ohio Rule of Criminal Procedure 16(B)(1)(g)[3], which relates to review of a witness's pretrial statements for inconsistencies, the trial court in the presence of the prosecutor and defense counsel reviewed in camera three prior statements by petitioner's daughter and found "only minor inconsistencies" between the statements. (Tr. 51).  The court found "an inconsistency as to the number of times this allegedly occurred" and an inconsistency on "the issue of why she wouldn't or didn't want

---

[3]Rule 16(B)(1)(g) governs the disclosure of evidence by the prosecuting attorney and states, in relevant part:

(1) Information Subject to Disclosure
  (g) In Camera Inspection of Witness' Statement.  Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
    If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

    If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

    Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.

Ohio Crim. R. 16

to go to Florida" to visit her father. (Tr. 51). Petitioner contends that having made the determination that the prior statements were in fact inconsistent, the trial court was required by the plain language of the Rule to permit their use in cross-examination but denied defense counsel's subsequent request for additional time to review the statements. (Tr. 121). Petitioner contends the judge's decision denied him his constitutional right to confront an adverse witness.

A defendant in a criminal trial has the right to confront the witnesses called against him. U.S. Const. amend. VI. The Confrontation Clause of the Sixth Amendment secures the right of a defendant to cross-examine an adverse witness for the purpose of uncovering possible biases and exposing the witness's motivation for testifying. *See Davis v. Alaska,* 415 U.S. 308, 316-317 (1974). Because cross-examination is "the most effective method by which a defendant can test the truth of testimony given against him," *Stevens v. Bordenkircher,* 746 F.2d 342, 346 (6th Cir. 1984), the right of confrontation and cross-examination is considered "an essential and fundamental requirement" for a fair trial. *Barber v. Page,* 390 U.S. 719, 721 (1968) (quoting *Pointer v. Texas,* 380 U.S. 400, 405 (1965)). *See also Kentucky v. Stincer,* 482 U.S. 730, 739 (1987). However, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985). Trial judges retain wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination. "This includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant." *Boggs v. Collins,* 226 F.3d 728, 736 (6th Cir. 2000). *See also Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986). Thus, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination,

10

thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Fensterer,* 474 U.S. at 22.

Petitioner contends he is entitled to relief because the trial court violated Ohio Criminal Rule 16 by not permitting him additional time to review the prior inconsistent statements. This alleged error, however, raises an issue of state law only which is not cognizable in this federal habeas proceeding. *See Estelle*, 502 U.S. at 67-68 (it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. §2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle,* 502 U.S. at 68. Any alleged misapplication of Ohio Rule of Criminal Procedure 16(B)(1)(g) is not cognizable on habeas review. *Lorraine v. Coyle,* 291 F.3d 416, 441 (6th Cir. 2002).

In any event, the trial judge's ruling in limiting additional review of the prior inconsistent statements did not abridge petitioner's constitutional rights. In ruling, the trial judge stated:

> The in camera inspection of the statement to the police before the witness began testifying[4], defense claims that they were not given ample time to review the statement in detail and *now they want to review it yet again* before finishing recross examination and the Court will not allow this. The jury has been very patiently waiting and we have gone through a lot of cross examination and I am not convinced that it is even a proper topic of impeachment to try and use this statement now on cross examination.

(Tr. 121) (emphasis added). As the judge points out, petitioner was not precluded from using any prior inconsistent statements to impeach his daughter's credibility, but rather was prohibited

---

[4]As defense counsel points out in the transcript, the judge misspoke as the in camera review occurred prior to the cross-examination of the witness. (Tr. 121, lines 11-12).

from delaying the trial any further in order to review the material again before resuming his re-cross-examination.  As the trial court found, petitioner was given ample opportunity to cross- and re-cross-examine petitioner's daughter on her ability to recollect the events in question and her ability to remember the details of the events.

The undersigned has carefully reviewed the transcript of the cross-examination and re-cross-examination of petitioner's daughter.  Defense counsel elicited testimony showing that petitioner's daughter testified to certain details at trial that did not appear in the earlier reports of the police and children's services worker.  Defense counsel pointed out these discrepancies and was given ample opportunity to cross-examine on this issue. (Tr. 88, 119).  Petitioner's cross-examination was directed at casting doubt on his daughter's general credibility and the jury had enough information before it to make a discriminating appraisal of the witness's credibility and motives for testifying. *Boggs,* 226 F.3d at 739; *United States v. Christian,* 786 F.2d 203, 213 (6th Cir. 1986); *see also United States v. Martin,* 920 F.2d 393, 396 (6th Cir. 1990); *Stevens,* 746 F.2d at 347.  Although constitutional error is committed if the trial court completely precludes all inquiry for the purpose of testing a particular witness's credibility or motivations for testifying, *Van Arsdall,* 475 U.S. at 679, the trial court did not prevent petitioner from impeaching the credibility of his daughter with her prior testimony.  The trial court merely limited petitioner's ability to further delay the trial to re-examine such testimony for purposes of re-cross-examination.  The trial court's decision in this regard did not violate petitioner's right to confrontation under the Sixth Amendment.  Accordingly, petitioner is not entitled to habeas corpus relief on this claim.

## V.  GROUND THREE IS WITHOUT MERIT

Ground Three of the petition asserts that the trial court erred in failing to instruct the jury

on the elements of sexual imposition, thereby violating petitioner's Sixth Amendment right to a trial by a competent jury that is fairly and properly instructed.

As an initial matter, to the extent petitioner claims he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law on the giving of jury instructions (see Doc. 1, memorandum at 2), he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

As to petitioner's Sixth Amendment claim, it is well-settled under Supreme Court case-law that the state must prove every element of the offense and a jury instruction violates due process if it fails to give effect to that requirement. *Middleton v. McNeil,* 541 U.S. 433, 437 (2004). However, not every ambiguity, inconsistency or deficiency in instruction rises to the level of due process violation. *Id.* Rather, the Court must determine whether the challenged instruction so infected the entire trial that the ensuing conviction violates due process. *Id.* (citing *Estelle v. Mc Guire,* 502 U.S. 62, 72 (1991)). *See also Henderson v. Kibbe,* 431 U.S. 145, 154 (1977). Before a federal court may overturn a state conviction based on an error in the jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146 (1973). The Supreme Court has clearly established that the challenged instruction must "not be judged in artificial isolation," but rather must be considered in the context of the instructions as a whole

13

and the trial record. *Cupp,* 414 U.S. at 146-47; *see also Estelle,* 502 U.S. at 72. In addition, if the challenged instruction is ambiguous, the inquiry turns on whether a reasonable likelihood exists that the jury applied the instruction in a way that violates the Constitution. *Estelle,* 502 U.S. at 72 (quoting *Boyde v. California,* 494 U.S. 370, 380 (1990)). *See also Binder v. Stegall,* 198 F.3d 177, 179 (6th Cir. 1999).

In this case, petitioner contends that the trial judge failed to instruct the jury on each and every element of the lesser included offense of sexual imposition and provided confusing directions as to the concept of a lesser offense. (Doc. 1, memorandum at 3). In support of this claim, petitioner cites to a portion of the transcript beginning at page 294, line 19 and ending at page 296, line 2. (Doc. 1, memorandum at 3-4). This portion of the transcript is admittedly confusing. It is apparent from a review of this portion of the instructions that the trial judge encountered typographical errors as he was reading this particular part of the jury instructions. Immediately following this somewhat confusing discussion, however, the trial judge went on to give a *corrected* version of the instruction:

> So, let's just start again with what you must do as to Counts 6 through 18. You must further consider the offenses charged in the indictment. If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of gross sexual imposition, your verdict must be guilty as charged. However, if you find that the State failed to prove beyond a reasonable doubt, all the essential elements of gross sexual imposition, then your verdict must be not guilty of that offense and in that event you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser included offense, of sexual imposition. If all of you are unable to agree on a verdict of either guilty or not guilty of gross sexual imposition, then you'll continue your deliberations to decide whether the State has proved beyond a reasonable doubt, all the essential elements of the lesser included offense of sexual imposition. So, we've got it in here correctly now. Thank you.

(Tr. 296, lines 3-18). Any possible confusion created by the judge's earlier statements was

14

dispelled by his reading of the corrected version of the instruction.

Petitioner further contends that the trial judge failed to instruct the jury that sexual gratification was indeed an element of the lesser crime of sexual imposition, citing to the following portion of the instructions:

> The offense of sexual imposition (sic) is distinguished from sexual imposition by the absence or failure to prove force.  Remember: this is Counts 6 through 18 only, purpose to compel Rebekah to submit by force or threat of force.  That's the element contained in that.  The only difference in the two crimes - everything else is the same.  Sexual contact -- you must find that she's under the age of eighteen.  You must find that this happened when she was between thirteen and eighteen and that there war a lack of evidence of force.  Purposely compelled by force or threat of force.  That's the only difference between the two crimes.  That's what makes sexual imposition a lesser offense of gross sexual imposition.

(Tr. 296-97).  Petitioner contends that according to the judge's instruction, "the jury need only find that [petitioner] engaged in sexual contact with his daughter (which was undefined in this portion of the instructions), that his daughter was between thirteen and eighteen years old, and that there was a lack of force without reference to the gratification requirement.  As such, it is entirely possible that the jury believed sexual gratification was not an element of sexual imposition at all given that the judge did not discuss or define it during his instructions on the lesser included offense.  Because [petitioner's] entire defense was built around whether the sexual gratification element was proven beyond a reasonable doubt, it was error for the judge not to explicitly instruct the jury as to that element." (Doc. 1, memorandum at 4).

The Court disagrees with petitioner's contention.  Immediately following the portion of the instructions cited by petitioner, the trial judge reiterated that "sexual contact" is an essential element of the offense of sexual imposition which must be proven beyond a reasonable doubt:

15

> If you find that the State failed to prove beyond a reasonable doubt, any one of the essential elements of the offense of sexual imposition, your verdict must be not guilty.  Again, all these crimes require proof of sexual contact.  All eighteen counts.  All of the lesser included offenses as to Counts 6 though 18, require proof of sexual contact.  Without proof beyond a reasonable doubt of sexual contact, your verdict must be not guilty as to every charge.

(Tr. 297, lines 5-11).  The judge earlier defined the term sexual contact as "any touching of an erogenous zone of another including, without limitation the five (sic)[5] genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." (Tr. 292, lines 7-10).  The judge repeatedly advised the jury that "sexual contact" was an element of every single charge. (Tr. 292, 293, 294, 296).  Given the above, there is not a reasonable likelihood that the jury misapplied the instructions so as to render a guilty finding on the sexual imposition charges without a finding of sexual contact, which by definition required a finding of sexual arousal or gratification.

Considering the challenged instruction in the context of the jury instructions as a whole and the trial record, *see Cupp*, 414 U.S. at 147, trial court's jury instructions were not so ambiguous or confusing so as to render his trial fundamentally unfair. *Estelle*, 502 U.S. at 72. Accordingly, petitioner is not entitled to habeas relief with respect to this claim.


## VI.  GROUND FOUR IS WITHOUT MERIT

Ground Four of the petition challenges the trial court's decisions to exclude the testimony of the defense expert, Dr. Plaud, and of petitioner's son, Josh Meredith, as violating his due process rights.  Petitioner contends that the testimony of his expert witness was clearly

---

[5]Transcribed as "five" instead of "thigh."

16

admissible under Ohio Rule of Evidence 702 and would have been directly relevant to the issue of whether petitioner committed the alleged acts of improper touching of his daughter for the statutorily prescribed purpose of sexual gratification or arousal.  In addition, petitioner contends Dr. Plaud's testimony would have rebutted evidence presented by the State that petitioner was sexually attracted to his daughter.  Respondent contends this ground for relief is not cognizable in federal habeas corpus because it involves an issue of state evidentiary law.

In addressing the merits of petitioner's claim, the Twelfth District Court of Appeals, the last state court to issue a reasoned opinion on the claim, found the following:

> {¶ 7} As a preliminary matter, we note that the admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. State v. Allen, 73 Ohio St.3d 626, 633, 1995-Ohio-283.  Absent an abuse of discretion, this court will not reverse the trial court's decision to exclude relevant evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265.  An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable, and not simply an error of law or judgment. State v. Bresson (1990), 51 Ohio St.3d 123, 129.

> {¶ 8} Appellant was convicted of sexual imposition in violation of R.C. 2907.06(A)(4). R.C. 2907.06 provides that:

> {¶ 9} "(A) No person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies:

> {¶ 10} " * * *

> {¶ 11} "(4) The other person * * * is thirteen years of age or older, but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person."

> {¶ 12} According to R.C. 2907.01(B), " '[s]exual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 13} While the purpose of sexual arousal or gratification is an essential element of the offense of gross sexual imposition and sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification. See In re D.S ., Warren App. Nos. CA2004-04-036 and CA2004-04-046, 2005-Ohio-1803, ¶ 19, citing In re Anderson (1996), 116 Ohio App.3d 441, 444.  Whether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact. Anderson at 443-444; State v. Mundy (1994), 99 Ohio App.3d 275, 289.  In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making the physical contact with the victim. Id.; State v. Cobb (1991), 81 Ohio App.3d 179.

{¶ 14} Appellant argues that in determining his purpose in making physical contact with the victim, the jury was entitled to also consider his personality. In support of this argument, appellant points to Mundy, where the court stated: "[i]n making its decision [regarding the defendant's purpose] the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant." (Emphasis added.) Mundy, 99 Ohio App.3d at 289, quoting Cobb, 81 Ohio App.3d at 185.

{¶ 15} At trial, appellant attempted to call as an expert witness Dr. Plaud. According to the record, if Dr. Plaud were permitted to testify before the jury, he would have explained that he completed an evaluation of appellant's "psychological personality and sexual function" and concluded that appellant has a "normal, healthy sexual attraction to adult females, and not to children or vulnerable adult women."  Appellant maintains that Dr. Plaud's proffered testimony was not for the purpose of demonstrating appellant's lack of criminal intent or purpose, which is prohibited. See State v. Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus, ("[t]he intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.")

{¶ 16} In refusing to permit Dr. Plaud to testify before the jury, the trial court reasoned, "[* * * I find that while Dr. Plaud certainly has impeccable credentials, [his testimony] invades the province of the jury * * *.  I think that a jury can determine for itself, what the purpose in touching, if they believe that touching occurred, was, without the benefit of a doctor coming in to testify as to what one intends when one touches another person in an erogenous area.  [It] is certainly within the capacity of the average juror * * * to determine whether or not this was done for the purpose of sexually arousing or gratifying either person."

{¶ 17} Evid.R. 702, which governs the admissibility of expert testimony, allows

18

expert testimony in the form of an opinion. However, the expert's testimony must concern a matter outside the competence of the jury to know and properly determine, and it must provide the jury with some means of determination not otherwise available to it. State v. Smith (1992), 84 Ohio App.3d 647, 659. Moreover, the trial court is granted broad discretion to admit or exclude such testimony. Id.

{¶ 18} We find that the trial court's stated reasoning for excluding Dr. Plaud's testimony does not amount to an abuse of its discretion.  According to Mundy, the defendant's personality may be one factor a jury can consider, in considering the type, nature, and circumstances of the physical contact. Mundy, 99 Ohio App.3d at 288.  However, neither Mundy, nor any other case appellant cites in support of its argument, involve an expert testifying on behalf of the defendant as to the defendant's personality.

{¶ 19} Mundy does provide that the essential question is, " * * * would an ordinary, prudent person or a reasonable person sitting as a juror perceive from the defendant's actions, and all of the surrounding facts and circumstances, that the defendant's purpose or specific intention was arousal or gratification of sexual desire." (Emphasis sic.) Id. at 289.

{¶ 20} At trial, appellant testified, "I would give [my daughter] a full body massage and * * * I would start at her head, and then her shoulders and her arms and work down her back to her lower back and down to her hips and her buttocks. I would move her pajama bottoms down to massage her buttocks and move them back up and then I would continue down to her feet and pull her pajama leg up and do her calves and her thighs."

{¶ 21} Also the trial court admitted evidence of an e-mail message appellant sent to his wife after he became aware that his daughter had told his wife about the massages. At trial, appellant admitted to sending the e-mail, which stated, "[t]o [R.M.], you, [and the rest of the family] I am very sorry. What seemed so innocent (rubbing her back) led to rubbing her bottom as well. * * * My thinking was fleshly and I was wrong."

{¶ 22} We find that the facts of appellant's behavior were well within the capacity of the jury to understand, as are the conclusions to be drawn from that behavior. From those facts, the jury could properly determine, without the aid of an expert, the purpose of appellant's actions.  Appellant's first assignment of error is overruled.

(Doc. 5, Exh. 7 at 3-7).

19

Petitioner has failed to show that the state court of appeals' decision is contrary to, or an unreasonable application of, clearly established Supreme Court authority. 28 U.S.C. § 2254(d). Petitioner does not cite a single federal case for the proposition that the exclusion of testimony such as that proffered by Dr. Plaud violates the Due Process Clause.[6]  Moreover, petitioner does not argue that the state appellate court's decision was contrary to or involved an unreasonable application of federal law clearly established in Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).

In reality, petitioner presents this claim of error as an issue of state evidentiary law. However, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 543 U.S. 892 (2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991); *see also Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (stating in reference to habeas corpus challenge to admission of other-acts evidence that "[s]tate court evidentiary rulings do not rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (internal quotation marks and citations omitted); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

---

[6]The only federal case cited in seven pages of argument by petitioner is *Washington v. Texas*, 388 U.S. 14 (1967), for the proposition that "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process law."  *Washington* is factually and legally inapposite, as it involved a Texas statute that prohibited principals, accomplices, or accessories in the same crime from being introduced as witnesses for each other.  The Supreme Court found that the exclusion of witnesses who were physically and mentally capable of testifying to events that they personally observed and whose testimony would be relevant and material to the defense violated the defendant's Sixth Amendment right to compulsory process.

2000), *cert. denied*, 532 U.S. 989 (2001) ("Errors in the application of state law, especially

rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a

federal habeas corpus proceeding.") (internal quotation marks and citation omitted).  A federal

court "may only grant habeas relief on this issue if the trial court's evidentiary ruling was so

egregious that it resulted in a denial of fundamental fairness." *Giles v. Schotten*, 449 F.3d 698,

704 (6th Cir. 2006) (citing *Baze v. Parker,* 371 F.3d 310, 324 (6th Cir. 2004)).

In the instant case, petitioner has failed to show that the exclusion of the expert testimony

proffered by Dr. Plaud deprived him of a fair trial or substantially undermined his ability to

present a defense.  Petitioner "does not have an unfettered right to offer testimony that is

incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v.

Illinois*,  484 U.S. 400, 410 (1988).  *See also Montana v. Egelhoff*, 518 U.S. 37, 41-42 (1996)

(evidence, even if relevant, is subject to the standard rules of evidence).  Under Ohio law, the

admissibility of expert testimony is governed by Ohio Evidence Rule 702.  The Ohio Court of

Appeals applied controlling Ohio authority and concluded that the proffered testimony from Dr.

Plaud would not have been helpful to the jury because expert testimony was not necessary for a

jury to understand the "facts of appellant's behavior" and "the conclusions to be drawn from that

behavior." (Doc. 5, Exh. 7 at 7).   From the evidence presented that petitioner gave his daughter

massages which included the erogenous zones, coupled with petitioner's admission to such

touching and his email acknowledging his "thinking was fleshly," the jury could properly

determine, without the aid of expert testimony, the purpose of petitioner's actions.  Petitioner has

failed to cite, nor has this Court uncovered, any United States Supreme Court which calls into

question the legitimacy of such a limitation upon the admission of expert testimony at a criminal

21

trial.[7]  Because petitioner does not raise an issue of federal constitutional law, but only challenges the Ohio Court of Appeals's interpretation of state law, he is not entitled to federal habeas corpus relief on this claim.

Petitioner also challenges the trial court's decisions to exclude the testimony of the petitioner's son, Josh Meredith.  As proffered by petitioner's trial counsel, Josh would have testified that:

> his bedroom was across from Rebekah's.  He . . . had never seen Rebekah's door closed or even slightly closed, that he walked into her bedroom at numerous times throughout the last two years that his father was at home and he did observe his father massaging his sister, that he observed the light on, that he observed that they were talking and that the reason that he would go in, was either to see his father and sister, was either to say good night or ask his dad a question or just be a bothersome brother.

(Tr. 226).  Petitioner contends that this testimony would have supported his position that he did not massage or touch his daughter for purposes of sexual arousal or gratification, the central issue in the case.  Petitioner states that Josh would have also testified about the argument that he had with his sister on the day that she first made the allegations against their father.  The argument allegedly concerned her rumored sexual misbehavior with older boys at school. (Tr. 226).  While petitioner's daughter testified that she could not remember what the argument was about, even though it was significant enough to make her cry (Tr. 68-72), Josh's testimony

---

[7]Indeed, the federal courts routinely exercise such a "gatekeeper" function and admit expert testimony in criminal trials only if it offers something "beyond the understanding and experience of the average citizen." *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir. 1985); *see, e.g., United States v. Olender,* 338 F.3d 629, 637-38 (6th Cir. 2003) (trial court properly excluded opinion testimony by defense witness, identified as criminologist, as unhelpful); *United States v. Fuentes-Cariaga,* 209 F.3d 1140, 1142 n. 3 (9th Cir. 2000) (exclusion of expert testimony did not "significantly impair" defendant's ability to present a defense as court may exclude "general testimony about an issue within the ken of the jury's knowledge"); *United States v. Felak,* 831 F.2d 794, 797-98 (8th Cir. 1987) (exclusion of expert psychiatric testimony regarding defendant's state of mind under Rule 702 not erroneous because matter was within the common understanding of jurors).

would have provided a possible motive for her to allege that her father was abusing her, namely to deflect attention from her own sexual misbehavior onto her father. Petitioner states that Josh's testimony would also have attacked the credibility of the victim, the state's most important witness.

In addressing this claim of error, the Ohio Court of Appeals stated:

{¶ 25} Appellant argues that the trial court abused its discretion in excluding appellant's son, Josh Meredith, from testifying after the witness violated an order for the separation of witnesses. Appellant maintains that he did not encourage his son to violate the order, and that his counsel instructed his son to stay out of the courtroom. Appellant claims that his son's testimony is extremely important to his defense, and that exclusion of his testimony is prejudicial error.

{¶ 26} Again, we note that the admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. Allen, 73 Ohio St.3d at 633. Absent an abuse of discretion, this court will not reverse the trial court's decision to exclude relevant evidence. Maurer, 15 Ohio St.3d at 265. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable, and not simply an error of law or judgment. Bresson, 51 Ohio St.3d at 129.

{¶ 27} In State v. Cox (1975), 42 Ohio St.2d 200, the Ohio Supreme Court held that in a criminal case where a witness's disobedience of an order for a separation of witnesses is not by procurement or connivance of the party calling him, a trial court may not use such disobedience as the basis for its refusal to permit the witness to testify. In State v. Smith (1990), 49 Ohio St.3d 137, 142, the court reiterated its holding in Cox, and stated, "the testimony sought to be introduced must be important to the defense such that exclusion of the evidence constitutes prejudicial error."

{¶ 28} At trial, when appellant's counsel called Josh Meredith as a witness, the state objected to allowing him to testify, arguing that he was in the courtroom during the testimony of other witnesses. Josh testified that he was in the courtroom when his mother, grandmother, and uncle testified. After this admission, the trial court stated: "The entire purpose of separating witnesses is so that they cannot shade their testimony to fit the testimony of other witnesses and this is a clear violation. [Appellant's counsel] told this witness to stay out of the courtroom. The witness ignored the order and I am excluding him from testifying."

23

{¶ 29} In explaining to the jury its decision to exclude Josh's testimony, the trial court stated: "Ladies and Gentlemen, I have determined not to permit Josh Meredith to testify.  I had ordered that all of the witnesses stay out of the courtroom, so that they did not hear the testimony of the other witnesses.  The attorneys on both sides, the prosecution and the defense, made that clear to both witnesses.  He violated my order and I have decided as a sanction that he cannot testify in this matter.  So, you will not be able to consider his testimony, but you should not hold that against any of the attorneys.  It's not their fault.  He's the one that simply didn't follow the instructions.  And, as a result he will not be testifying."

{¶ 30} After reviewing the record, we find that the trial court erred in excluding Josh Meredith from testifying.  Nothing in the record indicates that appellant or his counsel encouraged Josh to be in the courtroom or that they even knew of his presence.  In fact, the trial court even stated on the record that Josh's presence was not the fault of either attorney.

{¶ 31} Moreover, the trial court's stated reason for excluding Josh from testifying is inappropriate.  As the Ohio Supreme Court stated in Cox, 42 Ohio St.2d at 202, "the disobedience of an order for separation should not be rectified by denying possible relevant testimony, but by use of the court's power to punish for contempt." In addition, the court may permit the violation of the separation order to reflect on the witness's credibility. State v. Franklin (1991), 62 Ohio St.3d 118, 127.  However, a trial court may not punish a witness who has disobeyed a separation order without procurement on connivance by the party calling him, by excluding his testimony.

{¶ 32} Although the trial court erred in refusing to permit Josh to testify, we find such error to be harmless, as his testimony would not have been important to the determination as to appellant's purpose in touching the victim. See Smith, 49 Ohio St.3d at 142-143.  A harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights * * *." Crim.R. 52(A).

{¶ 33} According to the record, Josh would have testified as to the nature of an argument between appellant and the victim. Appellant argues that this alleged argument may have given the victim motive to make accusations against him.  Also, the record indicates that Josh's testimony would have contradicted some of the victim's testimony.

{¶ 34} However, as stated above, appellant admitted at trial that he massaged his daughter's buttocks and thighs, which are by definition, erogenous zones.  See R.C. 2907.01(B).  Appellant does not dispute that the touching actually occurred; rather, appellant argues that the touching was not for the purpose of sexually arousing or gratifying either person.  Josh's proffered testimony does not concern

24

the disputed criminal element of appellant's purpose in touching his daughter, and as previously discussed, the jury can properly infer from appellant's conduct what his purpose was in massaging his daughter's buttocks and things (sic). Accordingly, we conclude the trial court's error in refusing to permit Josh to testify was not prejudicial. Appellant's second assignment of error is overruled.

(Doc. 5, Exh. 7 at 7-11).

Again, petitioner argues this claim as a matter of state law, contending that the exclusion of Josh's testimony violated the holdings of the Ohio Supreme Court's decisions in *Cox* and *Smith*. Petitioner contends that the preclusion of Josh's testimony compromised his defense and "therefore violated his right to due process under the United States Constitution" without citing any United States Supreme Court authority in support thereof. As discussed above, this federal habeas court may not grant relief on the basis of perceived errors of state law.

In any event, this Court finds that the exclusion of Josh's testimony, even if it impaired petitioner's constitutional right to present a defense[8], was harmless. Petitioner is not entitled to habeas corpus relief unless such error had a "substantial and injurious effect or influence in

---

[8]The Sixth Circuit recently found:

The right to present a defense . . . is not absolute. *See Taylor,* 484 U.S. at 409 ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."); *see also Michigan v. Lucas,* 500 U.S. 145, 152, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (noting that the *Taylor* court "rejected the defendant's argument that, under the Compulsory Process Clause of the Sixth Amendment, preclusion is never a permissible sanction for a discovery violation") (emphasis and quotation marks omitted). As the Supreme Court reiterated most recently in *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (quoting *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)), the exclusion of evidence in a criminal trial "abridge[s] an accused's right to present a defense" only where the exclusion is " 'arbitrary' or 'disproportionate to the purpose[ ] [it is] designed to serve.' " *See also Scheffer,* 523 U.S. at 330 (Stevens, J., dissenting) ("As the Court notes today, restrictions on the 'defendant's right to present relevant evidence' ... must comply with the admonition in *Rock* ....") (citations omitted).

*Forensic v. Birkett,* __ F.3d __, 2007 WL 2471276, *6 (6th Cir. Sept. 4, 2007).

determining the jury's verdict." *See, e.g., Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993), in turn quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)); *see also O'Neal v. McAninch,* 513 U.S. 432, 435-36 (1995). Under this "harmless error" standard, if upon review of the entire record, the court is convinced that "the error did not influence the jury, or had but slight effect," the conviction must stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 764.

Here, the trial court's decision to exclude Josh's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict on the central question of whether the touching was for the purpose of sexually arousing or gratifying either person. As the Ohio Court of Appeals found, petitioner admitted at trial that he massaged his daughter's buttocks and thighs, which are by definition, erogenous zones, see R.C. 2907.01(B), and the jury could reasonably infer from his conduct his purpose in massaging his daughter's buttocks and thighs. Because Josh's proffered testimony did not concern the disputed criminal element of petitioner's purpose in touching his daughter, it is unlikely that the exclusion of such evidence had a substantial influence on the jury's determination of petitioner's guilt. Petitioner, therefore, has not demonstrated he is entitled to habeas relief based on the claim alleged in Ground Four of the petition.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED.

26

2.  A certificate of appealability should not issue with respect to the claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on the claim.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  _9/17/2007_            _s/Timothy S. Hogan_
   KI                         Timothy S. Hogan
                              United States Magistrate Judge

# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

JAMES MEREDITH, JR.,                           Case No. 1:06-cv-364
       Petitioner

                                               Weber, J.
     vs                                       Hogan, M.J.


WARREN COUNTY PROBATION
DEPARTMENT,
       Respondent


## NOTICE

       Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).